**TATE et al., Appellants,**

v.

**ADENA REGIONAL MEDICAL CENTER et al., Appellees.**

[Cite as *Tate v. Adena Regional Med. Ctr.*, 155 Ohio App.3d 524, 2003-Ohio-7042.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 03CA2699.

Decided Dec. 19, 2003.

---

51. *Vargo v. Travelers Ins. Co.* (1987), 34 Ohio St.3d 27, 516 N.E.2d 226.

52. Id.

Raymond deLevie, J.D., M.D., Co., L.P.A, and Raymond deLevie, for appellant.

Reminger & Reminger Co., L.P.A., and Paul–Michael La Fayette, for appellees.

———————

Peter B. Abele, Judge.

{¶ 1} This is an appeal from a Ross County Common Pleas Court summary judgment in favor of Adena Regional Medical Center, defendant below and appellee herein, on a spoliation-of-evidence claim brought by Brenda Tate, plaintiff below and appellant herein. The following errors are assigned for review:

## FIRST ASSIGNMENT OF ERROR

"The trial court failed to rule on plaintiff's motion filed November 21, 2001 for costs, expenses and attorney fees arising from the mistrial, which motion should have been granted."

## SECOND ASSIGNMENT OF ERROR

"By order time stamped '10:31 am 16 Dec 02', served on plaintiff after January 13, 2003, the trial court granted Adena Regional Medical Center's motion for summary judgment as to plaintiff's amended complaint alleging spoliation of evidence, although plaintiff-appellant had presented credible evidence as to each element of that tort as set forth in Ohio Jury Instruction 305.1 consistent with well established case law in the following cases: *Smith v. Howard Johnson Co., Inc.* [ (1993), 67 Ohio St.3d 28, 615 N.E.2d 1037], *Drawl v. Cornicelli* [ (1997), 124 Ohio App.3d 562, 706 N.E.2d 849], *Moskovitz v. Mt. Sinai Medical Center* [ (1994), 69 Ohio St.3d 638, 635 N.E.2d 331], and *Davis v. Wal–Mart Stores, Inc.* [ (2001), 93 Ohio St.3d 488, 756 N.E.2d 657]."

{¶ 2} In February 1998, Cheng–Chung Yen, M.D., performed appellant's laparoscopy at the Adena Regional Medical Center ("hospital"). Appellant and her husband had previously informed hospital nurses and staff that if the doctor identified cancer during the course of the laparoscopy, they were to report that finding to appellant's husband who would then make the decision whether to remove her ovary and fallopian tubes. During the procedure, Dr. Yen performed a Salpingo-oophorectomy (removal of ovary and fallopian tube) without any prior testing of the tissue or appellant's husband's consent. Apparently, no cancer appeared in the organs removed.

{¶ 3} Appellant and her husband filed the instant action against Dr. Yen, the hospital, and John Doe and Jane Doe hospital employees. The complaint alleged, inter alia, medical malpractice, battery (due to lack of informed consent), and the

loss of consortium. They asked for compensatory and punitive damages in excess of $25,000. Dr. Yen and the hospital both denied any liability.

{¶ 4} The case proceeded through extensive and contentious discovery before coming to trial. At the close of opening statements, the trial court judge noted that anticipated testimony that defense counsel had alluded to seemed to contradict an incident report that had previously been ordered to remain confidential under a protective order. The hospital voluntarily released the incident report to defense counsel the next day, and the report appeared to reflect contradictions between what a nurse wrote in that report and the nurse's deposition testimony. Noting that more discovery was necessary to identify precisely what had happened, the court declared a mistrial.

{¶ 5} Following the mistrial, appellant filed two items that are relevant to this appeal. First, on November 21, 2001, appellant filed a motion for costs and attorney fees as a result of the mistrial. Appellant charged that the mistrial was necessitated by the hospital's "misconduct" and further charged that the hospital had concealed other evidence for which appellant should be compensated.[1]

{¶ 6} The second filing relevant to this appeal is the amended February 8, 2002 complaint. That pleading set forth substantially the same claims contained in the original complaint, but also included a new claim against the hospital for "tortious interference with evidence/spoliation" and punitive damages. The hospital denied any liability.

{¶ 7} At the conclusion of the trial[2] the jury awarded (1) appellant $250,000 against Dr. Yen and (2) her husband's estate $25,000 for his loss of consortium claim.[3] The jury found in favor of the hospital, however, and further concluded that there had been no negligence on the part of the hospital nursing staff. Appellant subsequently filed a motion for judgment notwithstanding the verdict ("JNOV"), or, in the alternative, for a new trial. The trial court denied her request.[4]

---

1. Appellant's motion was supported by a 25–page memorandum. An affidavit attached to the motion was somewhat vague about the amount of fees and costs, but appellant did ask for at least $6,000 in attorney fees solely for the 40 hours expended in preparing that motion.

2. The issues tried included malpractice, battery, and other claims that were part of the original complaint. The court ordered the spoliation-of-evidence claim to be bifurcated from those issues and resolved at a later date.

3. Appellant's husband had passed away during the trial court proceedings. His estate was substituted as a party defendant.

4. Her motion was lengthy, but the gist of her argument seems to be that she should have been able to present evidence of the hospital's alleged misconduct to the jury and that some of the hospital's evidence should have been excluded.

{¶ 8} On October 16, 2002, the hospital filed a summary judgment motion on the spoliation of evidence claim. In particular, the hospital asserted that it neither destroyed nor concealed the report that caused the 2001 mistrial. Rather, the trial court had deemed that report privileged, and it was not disclosed to appellant pursuant to a protective order.

{¶ 9} Also, a controversy existed over a yellow Post-it® Note that was attached to the incident report but later discarded. The hospital, citing several nurses' deposition testimony, argued that (1) the Post-it® Note was not part of the record kept in the ordinary course of business, (2) the Post-it® was discarded as part of hospital procedure, and (3) it was unclear when the Post-it® Note was discarded, thus making it impossible to determine whether it was done to impede litigation.

{¶ 10} Appellant's memorandum contra took the position that—aside from the incident report that was at issue during the mistrial—the hospital engaged in a pattern of not producing other reports that should have been disclosed during discovery. Furthermore, the Post-it® Note issue should have been given to the jury to determine whether that note was part of the file and whether it was destroyed to impede the litigation.

{¶ 11} On December 16, 2002, the trial court granted summary judgment on the spoliation claim in the hospital's favor. The court found nothing to suggest that the hospital "destroyed or altered in any way" records or that the hospital intended to impede appellant's case. Further, the court noted that the hospital eventually produced the items sought through discovery and that the jury "considered all of the evidence available in the records of this case." The court reasoned that the delay in producing the reports, or the attempt to hide them, may indeed be sanctionable under the Civil Rules but did not give rise to a new cause of action. This was particularly true in light of the fact that the jury had already considered all of the evidence against the hospital and found that it was not negligent.

I

{¶ 12} Before we review merits of the assignments of error, we must address assorted jurisdictional issues. First, we note that the claims asserted against "John Doe" and "Jane Doe" (unknown hospital employees) have not formally been resolved. We also find nothing in the record to show that the complaint was amended to include those defendants or that service of process was ever perfected on them in a one-year period as required by Civ.R. 3(A). Thus, the action was not formally commenced against those defendants. Thus, the failure to resolve those claims does not render the judgment interlocutory and nonappealable. See *Hull v. Lopez,* Scioto App. No. 01CA2793, 2002-Ohio-6162,

2002 WL 31521582, at ¶ 32; *Knott v. Bridgestone/Firestone Tire & Rubber Co.* (Sept. 25, 1996), Summit App. No. 17829, 1996 WL 539186.

{¶ 13} Appellant raises another jurisdictional issue when she claims that the trial court did not expressly enter judgment for the hospital on the jury verdict returned in its favor. Obviously, a jury verdict alone does not constitute a final order under R.C. 2505.02 and, in the absence of a judgment, the claim against the hospital would remain unresolved. Our review of the record, however, reveals a December 10, 2002 entry that provides that "judgment is hereby entered against Defendant Dr. Yen in accordance with the jury's verdict in this matter, *and in favor of Adena Regional Medical Center.*" (Emphasis added.) This is sufficient to show an entry of judgment on that verdict.

{¶ 14} Finally, just one week after the trial court overruled appellant's first motion for new trial/JNOV, appellant filed a second motion for such relief, specifically "incorporating by reference her prior motion for the same relief." It appears to us that this motion has not been resolved. A Civ.R. 59 motion for new trial tolls the time period for filing a notice of appeal under App.R. 4(B)(2). Thus, until a trial court rules on the motion, the appeal time does not begin to run and a notice of appeal fails to invoke the appellate court's jurisdiction. See *Columbus v. Triplett* (Dec. 14, 1999), Franklin App. No. 99AP–368, 1999 WL 1140198; *White v. Bozman's* (Dec. 18, 1995), Hocking App. No. 95CA9, 1995 WL 752451. In the case sub judice, we need not concern ourselves with this particular problem, however, because appellant filed his second motion out of rule. See *Gallucci v. Freshour* (June 22, 2000), Hocking App. No. 99CA22, 2000 WL 864977.[5] Thus, the fact that the trial court did not decide the second motion is not an impediment to this court's jurisdiction.

{¶ 15} Thus, having determined that we do possess the jurisdiction to review this case, we turn to the merits of appellant's assignments of error.

## II

{¶ 16} Appellant argues in her first assignment of error that the trial court erred by failing to explicitly rule on her motion for attorney fees and costs (thus implicitly overruling her request). Although appellant is correct that a motion not expressly ruled on is deemed overruled, *Carver v. Map Corp.* (Sep. 18, 2001), Scioto App. No. 01CA2757, 2001 WL 1127005; *In re Lewis* (Apr. 30, 1997),

---

5. Civ.R. 59(B) mandates that motions for new trial be served no later than 14 days after judgment. The trial court filed its judgment on the jury verdict on November 22, 2002. Appellant filed her second motion for JNOV/new trial on December 23, 2002. This is outside the 14–day time limit.

Athens App. Nos. 96CA1760 and 96CA1763, 1997 WL 217573, we find no error in the trial court's failure to award appellant costs and attorney fees.

{¶ 17} A trial court's decision on a motion for attorney fees and costs is typically reviewed on appeal for an abuse of discretion. See, e.g., *Sherman v. Fifth Third Bank* (1993), 93 Ohio App.3d 63, 65, 637 N.E.2d 932; *Sheets v. Carmel Farms, Inc.* (June 5, 1997), Franklin App. Nos. 96APE09–1224 and 96APE09–1225, 1997 WL 303760; *Sturgill v. Sturgill* (Aug. 8, 1991), Montgomery App. Nos. 12457 and 12117, 1991 WL 227704. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Landis v. Grange Mut. Ins. Co.* (1998), 82 Ohio St.3d 339, 342, 695 N.E.2d 1140; *Malone v. Courtyard by Marriott L.P.* (1996), 74 Ohio St.3d 440, 448, 659 N.E.2d 1242; *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees* (1995), 72 Ohio St.3d 62, 64, 647 N.E.2d 486. In applying the abuse-of-discretion standard, appellate courts should not simply substitute their judgment for that of the trial court. *State ex rel. Duncan v. Chippewa Twp. Trustees* (1995), 73 Ohio St.3d 728, 732, 654 N.E.2d 1254; *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181; *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301. In order to establish an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1.

{¶ 18} In the case sub judice, we believe that the trial court's failure to award appellant attorney fees and costs did not constitute an abuse of discretion. We note that the mistrial was necessitated by the need to conduct further discovery concerning an incident report that the hospital had given appellant when it was not required to do so. The report had previously been deemed privileged. Nevertheless, because of the conflict with anticipated testimony, the hospital produced that report and allowed appellant to review its contents. We also note that nothing in the record suggests that the hospital had anything to do with the inconsistencies in the nurses' deposition testimony and the incident report. Accordingly, we hereby overrule appellant's first assignment of error.

### III

{¶ 19} Appellant argues in her second assignment of error that the trial court erred by granting summary judgment against her on the spoliation-of-evidence claim. Again, we disagree.

{¶ 20} Our analysis begins with the fundamental premise that we review summary judgments de novo. See *Broadnax v. Greene Credit Serv.* (1997), 118 Ohio App.3d 881, 887, 694 N.E.2d 167; *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41, 654 N.E.2d 1327; *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765. Thus, we afford no deference to a trial court's decision, see *Hicks v. Leffler* (1997), 119 Ohio App.3d 424, 427, 695 N.E.2d 777; *Dillon v. Med. Ctr. Hosp.* (1993), 98 Ohio App.3d 510, 514–515, 648 N.E.2d 1375; *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411–412, 599 N.E.2d 786. We conduct our own review to determine whether summary judgment was appropriate. *Woods v. Dutta* (1997), 119 Ohio App.3d 228, 233–234, 695 N.E.2d 18; *Phillips v. Rayburn* (1996), 113 Ohio App.3d 374, 377, 680 N.E.2d 1279; *McGee v. Goodyear Atomic Corp.* (1995), 103 Ohio App.3d 236, 241, 659 N.E.2d 317.

{¶ 21} Summary judgment under Civ.R. 56(C) is appropriate when the movant can demonstrate that (1) there are no genuine issues of material fact, (2) it is entitled to judgment in its favor as a matter of law, and (3) reasonable minds can come to only one conclusion and that conclusion is adverse to the opposing party, with the opposing party being entitled to have the evidence construed most strongly in its favor. *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201; *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 22} We further note that the moving party bears the initial burden of demonstrating that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. See *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164; *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. Once that burden is met, the nonmoving party must provide evidentiary materials in rebuttal. See *Trout v. Parker* (1991), 72 Ohio App.3d 720, 723, 595 N.E.2d 1015; *Campco Distrib., Inc. v. Fries* (1987), 42 Ohio App.3d 200, 201, 537 N.E.2d 661; *Whiteleather v. Yosowitz* (1983), 10 Ohio App.3d 272, 275, 10 OBR 386, 461 N.E.2d 1331. With these principles in mind, we turn our attention to the proceedings below.

{¶ 23} The claim at issue is spoliation of evidence. The elements of that claim are "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) *willful destruction of evidence by defendant designed to disrupt the plaintiff's case,* (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." (Emphasis added.) *Smith v. Howard Johnson Co., Inc.* (1993), 67 Ohio St.3d 28, 29, 615 N.E.2d 1037. We need not address all of the

elements in this case because it is clear that the third element (destruction of evidence designed to disrupt the plaintiff's case) has not been established.

{¶ 24} In its summary judgment motion, the hospital pointed out that all the incident reports were made available to appellant. Appellant used those reports at trial. None of the reports was destroyed. The only arguable destruction of evidence was the Post-it® Note attached to one of those reports. As the hospital pointed out, there is no evidence in the record to show when or who discarded the note. Thus, the hospital concluded, appellant could not prove the third element of spoliation. The burden then shifted to appellant to produce evidentiary materials to substantiate that evidence was willfully destroyed so as to disrupt her case. Appellant did not meet that burden.

{¶ 25} Appellant argued below, and continues to maintain on appeal, that her spoliation claim can go forward even though no incident reports were destroyed and they were eventually provided to her in discovery. She asserts that she can prevail on her claim of spoliation if she can show that appellees concealed evidence or interfered with discovery. As authority for her position, she cites *Davis v. Wal–Mart Stores, Inc.* (2001), 93 Ohio St.3d 488, 490, 756 N.E.2d 657, wherein Justice Pfeifer discussed "alleged misrepresentations and withholding of evidence" in reference to a spoliation claim. While this language does lend some support to appellant's claim that interference or concealment of evidence constitutes spoliation, we reject her argument.

{¶ 26} The issue in *Davis* was whether a spoliation claim was barred by the doctrine of res judicata. The spoliation claim itself was not at issue, and Justice Pfeifer's observations were mere dicta.[6]

{¶ 27} Additionally, our Second Appellate District colleagues recently considered the same issue and declined to expand spoliation to include giving false testimony. See *Pratt v. Payne*, 153 Ohio App.3d 450, 2003-Ohio-3777, 794 N.E.2d 723. The court in *Pratt* acknowledged the language used in the majority opinion of *Davis*, but after an exhaustive review of case law that applied spoliation solely in the context of destruction of evidence, the court concluded that the Ohio Supreme Court would not have overruled such "lengthy historical precedent" without being more explicit. Id. at ¶ 21 and 24. We agree with that conclusion.

{¶ 28} Moreover, we recently considered *Davis* and held that the majority opinion in that case did not set forth "a new cause of action for interference with

---

6. Justice Cook noted that the language in the majority opinion seemed to broaden "willful destruction of evidence" to include misrepresentation, interference, or concealment. 93 Ohio St.3d at 495, 756 N.E.2d 657 (Cook, J., dissenting). Nevertheless, Justice Cook also concluded that this was dicta and should not be misconstrued as broadening the definition of "willful destruction." Id. at 496, 756 N.E.2d 657.

evidence." *McGuire v. Draper, Hollenbaugh, & Briscoe Co., L.P.A.,* Highland App. No. 01CA21, 2002-Ohio-6170, 2002 WL 31521750, at ¶ 81.  Appellant offers nothing in her brief that causes us to reconsider that holding, and, thus, we find no evidentiary support for her spoliation claims with respect to the incident reports.[7]

{¶ 29} With respect to the Post-it® Note, we conclude that no evidence supports appellant's spoliation claim.  While we accept that the note was destroyed,[8] there is no evidence that the note was destroyed in order to *disrupt the plaintiff's case.*  It is conjecture that this note's destruction proximately caused any damage to appellant's case.  From our review of the record, it is not clear that the Post-it® would have benefited appellant's case.  Appellant argues that nurse Janice Butler's deposition testimony indicates that the note concerned "consent."  Our reading of her deposition, however, is much less conclusive.  At one point, Butler described the note as "a courtesy note to other staff members."  Elsewhere, she explained, "The note that I put on there *had nothing to do with consent.*  I—it was simply a courtesy to let them know how long the surgery would be."  (Emphasis added.)  The point is that we have no idea what information the Post-it® Note actually contained and whether it would have been helpful to appellant's case.  Thus, we do not see how appellant was damaged or prejudiced by the note's destruction.

{¶ 30} For these reasons, we find no error in the trial court's summary judgment for the hospital on appellant's spoliation-of-evidence claim, and her second assignment of error is hereby overruled.

{¶ 31} Having considered the two errors assigned and argued in the briefs, and after finding merit in neither of them, the judgment of the trial court is hereby affirmed.

Judgment affirmed.

EVANS, P.J., and KLINE, J., concur.

---

7.  We also note that even if the hospital willfully interfered to prevent appellant from gaining access to these reports, she obtained them prior to the second trial.  While we do not condone interference with discovery, it is difficult for us to conceive how appellant was prejudiced in the presentation of her case against the hospital to the jury—which is the premise underlying a spoliation claim.

8.  Janice Butler's deposition testimony indicates that the Post-it® Note may still actually exist somewhere, but no one knows its location.  For the sake of our analysis, we assume that the note was destroyed.